## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

MALICK-FARDY B. TRAORE,

                    *Plaintiff,*

        v.                                                    CIVIL ACTION
                                                              NO. 25-4767
PLANET HOME LENDING, LLC, et al.,

                    *Defendants.*

Pappert, J.                                          September 30, 2025

### MEMORANDUM

Malick-Fardy B. Traore took out a loan to buy a home.  Seeking to extinguish his debt, he sued three mortgage companies alleging an array of federal and state claims. AmeriSave Mortgage Corp., Planet Home Lending, LLC and Dovenmuehle Mortgage Inc. now move to dismiss Traore's Complaint on the grounds that he fails to state claims against them.  The Court grants the motions[1] and will allow Traore to amend one of his claims.

I

Traore borrowed $166,920 from AmeriSave to buy a home in Philadelphia. (Compl. Ex. A at 26, Dkt. No. 1-1.)  The loan was secured by a mortgage on the property.  *See* (*Id.* Ex B. at 31); (Planet Home Lending, LLC, Mem. of L. in Supp. of

---

[1]    Traore does not mention Dovenmuehle in the body of his Complaint or in his accompanying brief.  *See* (Compl. at 2–10, Dkt. No. 1-1); (Pl.'s Mem. of L. in Supp. of Compl. at 12–18, Dkt. No. 1-1). As Dovenmuehle explains, Traore "simply [does] not aver that the conduct complained of had anything to do with" Dovenmuehle.  (Dovenmuehle Mortg., Inc. Mem. of L. in Supp. of Mot. to Dismiss at 7, Dkt. No. 12-1.)  The Court grants Dovenmuehle's motion accordingly and dismisses without prejudice any claims against it.

Mot. to Dismiss at 1–21, Dkt. No. 9-2).  Traore claims AmeriSave assigned the promissory note and/or mortgage to Planet Home Lending.  (Compl. ¶ 20.)  At that moment Planet Home Lending "acquired the servicing rights to" Traore's "mortgage obligation."  (*Id.* ¶ 10.)  And, Traore claims, the note and/or mortgage were "securitized" at some point and are now "among the assets" of a Real Estate Mortgage Investment Conduit Trust.  (*Id.* ¶ 18); (Pl.'s Mem. of L. in Supp. of Compl. at 13, Dkt. No. 1) (explaining that his "promissory note was securitized and deposited into a REMIC trust").

## II

The Court assesses the sufficiency of a pleading before discovery under Federal Civil Rules 8 and 12.  Rule 8(a)(2) provides that a complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  And Rule 12(b)(6) permits a district court to dismiss a complaint that fails "to state a claim upon which relief can be granted."  *Id.* 12(b)(6).  Taken together, the two rules require the plaintiff to allege sufficient "facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The first step in determining whether a plaintiff has stated a plausible claim is to "tak[e] note of the elements" underlying his claim.  *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009); *Santiago v. Warminster Township*, 629 F.3d 121, 129–30 (3d Cir. 2010).  The second step is to examine the plaintiff's complaint and determine whether the factual allegations "plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

Plausibility requires the plaintiff to plead sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id.* at 678. The reasonableness of an inference depends on common sense and the strength of competing explanations for the defendant's conduct. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786–87 (3d Cir. 2016); *Iqbal*, 556 U.S. at 682. Plaintiffs do not meet the plausibility burden when the facts alleged are "merely consistent with a defendant's liability" or show nothing "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quotation marks and citation omitted). In gauging the plausibility of a claim, the Court must accept as true all well-pleaded factual allegations, construe those facts in the light most favorable to the plaintiff, and draw reasonable inferences from them. *Connelly*, 809 F.3d at 786 n.2. Because Traore is proceeding *pro se*, the Court construes his complaint liberally. *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021).

## III

Traore asserts eleven claims against AmeriSave and Planet Home Lending.[2] For nearly all of them, he advances arguments rooted in sovereign citizen ideology attempting to "extinguish a lawful and legitimate debt." *Young v. PNC Bank, N.A.*, No. 16cv298, 2018 WL 1251920, at *2 n.1 (N.D. Fla. Mar. 12, 2018) (order). The customary practice is to "summarily" reject such "frivolous" arguments. *Geiger v. Conroy*, No. 22-2458, 2023 WL 2577233, at *1 n.1 (E.D. Pa. Mar. 20, 2023) (internal quotation marks

---

[2]      Traore's Complaint is hard to decipher. He offers a hodge-podge of factual allegations, then lists various "causes of action." He does not identify the particular claims he is bringing against AmeriSave and Planet Home Lending, nor does he clarify the facts underlying his claims. Though the Court is not "required to guess which particular claims are being asserted [against which defendants] on the basis of which events and/or to sift through the allegations to piece together those claims," *Friedfertig Fam. P'ship 2 v. Lofberg*, No. 13-1546, 2013 WL 6623896, at *3 (D.N.J. Dec. 13, 2013), the Court has done precisely that.

and citation omitted).  With this in mind, the Court addresses each of Traore's claims in turn.

A

Traore first claims his promissory note is unenforceable under Pennsylvania contract law because he never received consideration from AmeriSave.  (Compl. ¶¶ 14–16); (Pl.'s Mem. of L. in Supp. of Compl. at 13).  A promissory note, like other contracts, is enforceable when there is consideration.  *Third Nat'l Bank & Trust Co. of Scranton v. Rodgers*, 198 A. 320, 321 (Pa. 1938).  Consideration means "any bargained for exchange."  *Greene v. Oliver Realty, Inc.*, 526 A.2d 1192, 1195 (Pa. Super. Ct. 1987).  And a bargained for exchange consists of "a benefit to the promisor or a detriment to the promisee."  *Weavertown Transp. Leasing, Inc. v. Moran*, 834 A.2d 1169, 1172 (Pa. Super. Ct. 2003).

Traore fails to state a claim because AmeriSave offered consideration. AmeriSave gave Traore a sum of money in exchange for a promise by Traore that he would pay the money back with interest.  *See* (Compl. Ex. A at 26–29).  The loan was a benefit to Traore so AmeriSave gave "valuable consideration."  *Conmey v. Macfarlane*, 97 Pa. 361, 364 (Pa. 1881).

Traore says AmeriSave "failed to loan . . . money or incur risk from its own capital."  (Compl. ¶ 16.)  He claims AmeriSave used his "signature [on the promissory note] to generate credit" and "fund" his "alleged loan."  (*Id.* ¶ 15); (Pl.'s Mem. of L. in Supp. of Compl. at 13).  A promissory note, some sovereign citizens believe, is "the equivalent of money" a person "create[s]" with his "signature[]."  *McLaughlin v. CitiMortgage, Inc.*, 726 F. Supp. 2d 201, 212 (D. Conn. 2010) (internal quotation marks

4

and citation omitted).  Thus, when a person signs a promissory note in favor of a lender, he gives the lender money.  *Demmler v. Bank One NA*, No. 05-CV-322, 2006 WL 640499, at *3 (S.D. Ohio Mar. 9, 2006).  The lender accepts the money, deposits it into an account, lists it as an asset on its ledger, and then "essentially len[ds] [the signer's] own money back to him."  *Id.*; *McLaughlin*, 726 F. Supp. 2d at 212 (describing a sovereign citizen's argument that a lender "lend[s] the money that was created by the citizen's signature [on the promissory note] *back to the citizen-borrower*") (emphasis in original).  Because the lender gives the signer of the note his own money, the "lender [gives] essentially no consideration, and risk[s] nothing, in making the purported loan." *McLaughlin*, 726 F. Supp. 2d at 213; *Demmler*, 2006 WL 640499, at *3.

Unsurprisingly, federal courts have "universally and emphatically rejected" this argument "for at least the last 25 years."  *McLaughlin*, 726 F. Supp. 2d at 214; *Demmler*, 2006 WL 640499, at *4 (describing the theory as "patently ludicrous").  When Traore signed his promissory note, he did not give AmeriSave money.  Indeed, if he had "tried to deposit [his] promissory note as a check in any financial institution claiming it was cash," Traore would "have quickly discovered that the note did not create money out of the ether."  *Johnson v. Wennes*, No. 08cv1798, 2009 WL 1228500, at *4 (S.D. Cal. May 5, 2009).  Rather, when Traore signed his note, he promised to pay AmeriSave a sum of money plus interest in the future.  (Compl. Ex. A at 26–29.)  And, again, in exchange for this promise, AmeriSave gave Traore valid consideration—a loan to buy his home.

Traore also claims AmeriSave did not provide "*equal* consideration."  (Compl. ¶ 15) (emphasis added.)  But "courts do not go into the question of equality or inequality

5

of" the bargained for exchange. *Erie Forge Co. v. Pa. Iron Works Co.*, 22 Pa. Super. 550, 555 (Pa. Super. Ct. 1903) (internal quotation marks and citation omitted). Consideration is good if it is *sufficient*, and a "very slight advantage to one party or a trifling inconvenience to the other is sufficient consideration to support a contract." *Id.* (quotation marks and citation omitted).

B

Traore next claims AmeriSave, by using his promissory note to generate the loan, violated Article I, § 10 of the U.S. Constitution.  (Compl. at 8); (Pl.'s Mem. of L. in Supp. of Compl. at 13).  Traore cannot state a claim for at least three reasons.  First, he fails to identify the cause of action through which he seeks to enforce Article I, § 10. *United States v. Hallinan*, 75 F.4th 148, 151 (3d Cir. 2023) (explaining that a plaintiff must have a cause of action to enforce federal law); *DeVillier v. Texas*, 144 S. Ct. 938, 943 (2024) (explaining that constitutional provisions "do not typically come with a built-in cause of action to allow for private enforcement in courts").  Second, Article I, § 10 applies to "States," not private corporations like AmeriSave.  U.S. Const. Art. I, § 10; *McLaughlin*, 726 F. Supp. 2d at 212 n.11 (emphasizing Article I, § 10 "explicitly applies only to the States"); *Tillman v. Capital One Auto Fin.*, No. 24-570, 2024 WL 4437053, at *2 n.3 (D. Minn. Oct. 7, 2024) (emphasizing in a sovereign citizen suit that Article I, § 10 "restrains the power of states, and not private entities").  Third, assuming Traore has a cause of action to enforce Article I, § 10 against a private corporation like AmeriSave, courts "consistently" reject the argument rooted in sovereign citizen theory

6

that a lender cannot issue a loan without violating Article I, § 10. *Rudd v. KeyBank, N.A.*, No. C2-05-CV-0523, 2006 WL 212096, at *4 (S.D. Ohio Jan. 25, 2006).[3]

### C

Traore next claims Section 860G of Title 26 of the U.S. Code "extinguishe[s]" his loan obligation. (Compl. ¶ 19.) He first fails to show he has a cause of action to enforce § 860G. *See Hallinan*, 75 F.4th at 151. Second, he fails to explain how § 860G supports his claim. Section 860G—titled "Other definitions and special rules"—provides definitions for certain terms related to Real Estate Mortgage Investment Conduits in the context of a broader statutory scheme establishing how REMICs are taxed. 26 U.S.C. § 860G.

### D

Traore next claims his debt was "extinguished by securitization" of his promissory note. (Compl. ¶ 20); (Pl.'s Mem. of L. in Supp. of Compl. at 13). This claim is also rooted in sovereign citizen ideology: The so-called "securitization theory" holds that "the mere securitization of a [promissory] note" "renders the note unenforceable." *Bendeck v. U.S. Bank Nat'l Ass'n*, No. 17-00180, 2017 WL 2726692, at *5 (D. Haw. June 23, 2017).

"Securitization is a process in which lenders transfer mortgage loans into a single pool or trust and sell interests in that pool or trust to investors who receive certificates entitling them to share in the stream of income generated by the repayment of the underlying loans." *In re Walker*, 466 B.R. 271, 273 n.2 (Bankr. E.D. Pa. 2012).

---

[3]     Traore also claims AmeriSave violated the Pennsylvania Constitution by taking his property without due process of law. *See* (Compl. at 8); (Pl.'s Mem. of L. in Supp. of Compl. at 15). He provides no support for the contention that a private lender takes property without due process of law in violation of the Pennsylvania Constitution when it secures a loan with a mortgage.

Thus, by definition, securitization "does not alter a borrower's obligation to pay back his" loan. *Dauenhauer v. Bank of N.Y. Mellon*, No. 12-cv-01026, 2013 WL 2359602, at *5 (M.D. Tenn. May 28, 2013) (order).[4]  Because securitization does not "absolve" Traore "from having to make payments on his loan," he cannot state a claim. *Id.* (internal quotation marks and citation omitted).

E

Traore also claims the "transfer of [his] mortgage" by AmeriSave to Planet Home Lending "was void ab initio" because two documents—"GNMA 2022-125 Prospectus" and "Ginnie Mae MBS Guide Part III"—prohibited the transfer.  (Compl. ¶ 20.)  But Traore did not attach these documents to his Complaint.  And he does not tell the Court how to locate the documents, nor does he explain how the documents support his argument.

F

Traore next seeks a declaration that he "tendered several negotiable instruments, including Bills of Exchange" to discharge his debt and AmeriSave "rejected these tenders."  (Compl. ¶¶ 24, 25.)  Sovereign citizens believe the federal government has "individual trust accounts, one for each citizen" and that individuals may "discharge [their] debts to third parties with Bills of Exchange that are drawn on" those "account[s]."  *Bryant v. Washington Mut. Bank*, 524 F. Supp. 2d 753, 759 (W.D.

---

[4]    Courts routinely reject the "securitization theory."  *See e.g.*, *Thompson v. Bank of Am., N.A.*, 773 F.3d 741, 749 (6th Cir. 2014) (explaining that "payments related to the securitization of a note do not function to satisfy the borrower's mortgage obligations"); *Robinson v. Moynihan*, No. 21cv122, 2021 WL 2346107, at *7 (E.D. Va. June 8, 2021) (explaining that securitization "has no bearing on the terms and obligations of the underlying" debt); *Urquhart v. Vandyk Mortg. Corp.*, No. 22-CV-823, 2022 WL 3336433, at *3 (N.D. Ga. May 13, 2022) (order) (holding that a plaintiff's argument that the "securitization of his loan somehow eliminated his mortgage obligation" had "no basis in law") (internal quotation marks and citation omitted).

Va. 2007); *see also In re McLellan*, No. 24-cv-05686, 2025 WL 1550215, at *1 (E.D. Pa. May 30, 2025) (describing a sovereign citizen's attempt to "discharge his responsibility to pay his mortgages" with "a fabricated bill of exchange that purports to access a nonexistent U.S. Treasury Account"). Courts "routinely reject as frivolous the Bill of Exchange theory [Traore] advances." *Kennebrew v. PNC Bank*, No. 25-cv-13, 2025 WL 801169, at *2 (E.D. Tenn. Mar. 13, 2025).

Traore also claims AmeriSave violated the "Bill of Exchange Act." (Compl. ¶ 26.) Courts "regularly dismiss[] complaints invoking the Bill[] of Exchange Act as each invariably has been deemed frivolous." *Potter v. Verizon Commc'ns Inc.*, No. 24-1856, 2024 WL 3757901, at *2 (D. Md. Aug. 12, 2024). In fact, "courts have repeatedly noted that the Bill of Exchange Act is not a law of the United States." *Gray v. Atlanta Autos*, No. 25-5983, 2025 WL 2374170, at *2 (D.N.J. Aug. 14, 2025); *see also Potter*, 2024 WL 3757901, at *2 (recognizing that "the United States Congress has never passed a statute by that name"); *Evans-Williams v. Sunstates Mgmt. Corp.*, No. 23-cv-235, 2024 WL 3733392, at *4 n.6 (S.D. Miss. Aug. 8, 2024) (explaining that "the Court has been unable to identify a federal statute entitled 'Bill of Exchange'").

## G

Traore next seeks to rescind his mortgage under the Truth in Lending Act. (Compl. ¶¶ 27–28.) Congress enacted the TILA to ensure that "consumer[s] will be able to compare more readily the various credit terms available to [them] and avoid the uninformed use of credit." 15 U.S.C. § 1601(a). To achieve this goal, the Act "requires creditors to provide borrowers with clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's

rights." *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998). When a "loan made in a consumer credit transaction is secured by the borrower's principal dwelling, the borrower may rescind the loan agreement if the lender fails to deliver certain forms or to disclose important terms accurately." *Id.* at 411. Seeking to benefit from the TILA, Traore claims his loan from AmeriSave should be rescinded "due to fraud, nondisclosure, and concealment of material facts." (Compl. ¶ 27.)

The right of recission under the TILA does not apply to a "residential mortgage transaction." 15 U.S.C. § 1635(e)(1); *Dunn v. Bank of Am., N.A.*, 844 F.3d 1002, 1005 (8th Cir. 2017) ("Based on the plain language of the statute, an obligor to a loan which qualifies as a residential mortgage transaction is not entitled to the right of recission under § 1635(a)."). And a "residential mortgage transaction" is a "transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x). Traore's mortgage was "created or retained" against his house to "finance [its] acquisition" so he cannot seek to rescind it. *Id.*; (Compl. ¶ 14) (alleging that Traore took out the mortgage "for the purpose of acquiring" his home).

### H

Traore next claims AmeriSave violated the Real Estate Settlement Procedures Act. (Compl. ¶¶ 29, 30.) RESPA imposes obligations on a loan servicer that receives a "qualified written request" for information from a borrower. *See* 12 U.S.C. § 2605(e). To state a claim against a servicer for failing to comply with § 2605, a plaintiff must first allege that he sent the servicer a "qualified written request." *Id.* § 2605(e)(1)(A); *Jones v. ABN AMRO Mortg. Grp., Inc.*, 551 F. Supp. 2d 400, 411 (E.D. Pa. 2008). A

qualified written request is a "statement of the reasons for the belief of the borrower . . . that [his] account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). If he can show he sent a loan servicer a qualified written request, a plaintiff must also show that the servicer failed to timely do one of three things: (1) make appropriate corrections to the borrower's account, (2) provide the plaintiff a written explanation as to why the servicer believes the account does not need correction, or (3) provide the borrower his requested information or explain why the information cannot be obtained. *See id.* § 2605(e)(2). Finally, the plaintiff must allege that he suffered damages as a result of the servicer's failure to comply with its obligations under § 2605. *Id.* § 2605(f); *Lloyd v. N.J. Hous. & Mortg. Fin. Agency*, 845 F. App'x 139, 144 (3d Cir. 2021) (per curiam).

Traore fails to state a claim because he does not allege sufficient facts to support any of these elements. First, he fails to allege facts sufficient to show he sent AmeriSave a qualified written request. He claims only he requested "the complete chain of title, identity of the current note holder, and insurance claim or payout information." (Compl. ¶ 29.) This allegation does not permit the Court to draw the inference that Traore's letter to AmeriSave stated the "reasons for" his belief that his "account [wa]s in error" or provided "sufficient detail" regarding the information he sought. 12 U.S.C. § 2605(e)(1)(B).

Second, even if Traore sent AmeriSave a qualified request, he fails to show that AmeriSave failed to appropriately respond to his request. He claims AmeriSave "refused to provide meaningful responses." (Compl. ¶ 30.) But this allegation does not permit the Court to draw the reasonable inference that AmeriSave failed to respond to

Traore in a manner required by the statute.  *See* 12 U.S.C. § 2605(e)(2); *Hutchinson v. Del. Sav. Bank FSB*, 410 F. Supp. 2d 374, 382 (D.N.J. 2006).

Third, Traore fails to allege *any* facts to show he suffered damages.  *Stefanowicz v. SunTrust Mortg.*, 765 F. App'x 766, 772 (3d Cir. 2019) (per curiam) (holding that a plaintiff failed to state a claim under RESPA because "at no time has she alleged sufficient facts to show that she suffered actual damages as a result of the defendants' alleged failures" to comply with the Act).

## I

Traore next claims AmeriSave violated the Gramm-Leach-Bliley Act.  (Compl. ¶ 31.)  Private plaintiffs do not have a cause of action to enforce that statute.  *Clark v. TD Bank, NA*, No. 25-CV-0881, 2025 WL 1508019, at *2 (E.D. Pa. May 27, 2025); *Gray v. Capital One Fin. Corp.*, No. 25-CV-0925, 2025 WL 1644421, at *5 n.3 (E.D. Pa. June 6, 2025); *Hayward v. Sw. Credit Sys.*, No. 23-3234, 2023 WL 5651987, at *4 n.4 (E.D. Pa. Aug. 31, 2023); *Dunmire v. Morgan Stanley DW, Inc.*, 475 F.3d 956, 960 (8th Cir. 2007).

## J

Traore also asks the Court to "cancel" or "discharge" his debt on a theory he calls "third-party monetization."  (Compl. ¶¶ 33, 37.)  He argues that AmeriSave earned "proceeds" by selling his promissory note and/or mortgage to Planet Home Lending.  (*Id.* ¶ 33.)  That means, Traore suggests, his debt has been "extinguished by third-party payment."  (*Id.* ¶ 37.)  These allegations fail to state a claim because they are just another variation on his "securitization theory."  The Court is aware of no authority to

support the argument that a consumer's debt disappears when his creditor sells the debt to a third party.

K

Traore lastly claims AmeriSave "failed to provide notice to or obtain consent from [him]" before "attempting to transfer [the] servicing rights" of his loan to Planet Home Lending. (*Id.* ¶ 43.) That, Traore argues, violated his rights as the "secured party creditor" of his home under the Pennsylvania Commercial Code. (*Id.* ¶¶ 40–42.) It is "common" for sovereign citizens to attempt to extinguish their debts by "filing supposed UCC financing statements" and claiming they are "secured part[ies]" or "secured creditor[s]" of property. *Mack v. Sweet*, No. 17-cv-00434, 2017 WL 6756667, at *3 (N.D. Tex. Dec. 4, 2017), *R. & R. Adopted*, 2017 WL 6729630 (N.D. Tex. Dec. 28, 2017). They argue "that they can file . . . liens" against any property, essentially making them full owners of that property. *Id.*

Traore is not a secured creditor of his home. A secured creditor is a "creditor who has the right, on the debtor's default, to proceed against collateral and apply it to the payment of his debt." *Secured Creditor*, Black's Law Dictionary (12th ed. 2024). Traore alleges he filed a "UCC-1 Financing Statement with the Pennsylvania Department of State, naming himself as the Secured Party over the subject property." (Compl. ¶ 40.) That, he says, gave him an "active lien" on his home. (*Id.* ¶ 42.) But Traore cannot evade his mortgage payments by sending the Pennsylvania government a document saying he fully owns his home.

13

IV

District courts have discretion to grant or deny a plaintiff leave to amend his complaint. *Cureton v. Nat'l Collegiate Athletic Ass'n*, 252 F.3d 267, 272 (3d Cir. 2001). A court should grant leave to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). This rule expresses "a preference for liberally granting leave to amend" unless "amendment would cause undue delay or prejudice, or that amendment would be futile." *Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000). Amendment is futile when "the complaint, as amended, would fail to state a claim upon which relief could be granted." *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Because "sovereign citizen claims are based on an indisputably meritless legal theory" they "should be dismissed with prejudice." *Harrison v. Iriarte*, No. 23-CV-141, 2024 WL 4360626, at *10 (N.D. Miss. Aug. 6, 2024), *R. & R. Adopted*, 2024 WL 4363236 (N.D. Miss. Sept. 30, 2024); *see also Whaley v. Pennsylvania*, No. 22-CV-1348, 2024 WL 5717745, at *3–5 (M.D. Pa. July 8, 2024), *R. & R. Adopted*, 2024 WL 5717748 (M.D. Pa. Aug. 5, 2024) (dismissing a sovereign citizen's complaint with prejudice because his claims were frivolous); *Washam v. Superintendent Dallas SCI*, No. 21-3073, 2022 WL 1402054, at *1 (3d Cir. May 4, 2022) (per curiam) (affirming a district court's decision to dismiss a complaint with prejudice because the plaintiff advanced "frivolous Sovereign-Citizen-like arguments and legal jargon").

The Court dismisses all such claims with prejudice. The Court also dismisses Traore's claims under the TILA and GLBA with prejudice because those claims fail as a matter of law, which means Traore can allege no facts to cure them. Traore may amend his Complaint to attempt to state a claim under RESPA against AmeriSave.

14

An appropriate Order follows.

BY THE COURT:

***/s/ Gerald J. Pappert***

Gerald J. Pappert, J.